**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IOAN LUPAS and MARIA LUPAS,

       Plaintiffs,

v.                                                                                                   Case No. 11-14584

U.S. BANK, NA, as Trustee for the Structured
Asset Investment Loan Trust, 2006-BNC3,

       Defendant.

                                             /

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

On September 19, 2011, Plaintiffs Ioan and Maria Lupas initiated the above-captioned action in the Oakland County Circuit Court against Defendant U.S. Bank, NA, in part to maintain possession of their residence at 26701 Holly Hill Drive, Farmington Hills, Michigan, that had been sold five months earlier in a foreclosure sale. The Complaint also seeks monetary damages for Defendant's alleged mismanagement of Plaintiffs' mortgage and the foreclosure proceedings. Defendant removed the case on the basis of federal question and diversity jurisdiction on October 18, 2011. Before the court is Defendant's motion for judgment on the pleadings. The motion has been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant Defendant's motion and dismiss the Complaint with prejudice.

## I.  BACKGROUND

On May 2, 2006, Plaintiffs received a $351,000 residential mortgage loan from BNC Mortgage, Inc. ("BNC").  (Compl. ¶ 7, Dkt. # 1.)  The mortgage loan was recorded on May 16, 2006, with the Oakland Country Register of Deeds.  (*Id.*)  As security for the loan, Plaintiffs granted a mortgage on their residence to Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee for BNC and its successors and assigns.  (*See* Mortgage, Dkt. # 1-1.)  The mortgage further granted MERS, as nominee of the lender, the power of sale of the property in the event of Plaintiffs' default.  The mortgage expressly states that Plaintiffs:

> understand[ ] and agree[ ] that MERS holds only legal title to the interests granted by [Plaintiffs] in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise an or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(*Id.* at 3.)

The mortgage contains nearly two dozen uniform covenants, including (1) an agreement that Plaintiffs would make their principal and interest payments on time each month, (*id.* at 4); (2) an agreement that Plaintiffs would maintain their residence in good repair, (*id.* at 7); and (3) an authorization permitting the mortgagee to secure Plaintiffs' residence in the event that Plaintiffs "fail[ ] to perform the covenants and agreements" contained in the mortgage or when Plaintiffs have "abandoned the Property," (*id.* at 8). The mortgage further provides that "[s]ecuring the Property includes, but is not limited to, entering the Property to make repairs, change locks, . . . [and] eliminate building or other code violations."  *Id.*

On February 16, 2010, MERS assigned the mortgage to Defendant. (Assignment of Mortgage, Dkt. # 8-3.) This assignment was signed on March 18, 2010, by Michael Hunt on behalf of MERS, and was recorded with the Oakland County Register of Deeds on March 29, 2010. (*Id.*) The assignment states that "[MERS] as nominee for lender and lender's successors and/or assigns . . . has sold, assigned and transferred . . . to [Defendant] all the right, title and interest of [MERS] in and to a certain real estate mortgage dated May 2, 2006, made by [Plaintiffs]." (*Id.*)

Although not entirely clear from the Complaint, Plaintiffs appear to have been unable to make regular monthly payments on their loan and began working with Defendant on a loan modification agreement. (*See* Compl. ¶¶ 20-24; Am. Answer ¶¶ 20-21.) The parties entered such an agreement on June 1, 2009. (Am. Answer ¶¶ 20-21.) Defendant states and Plaintiffs do not dispute that Plaintiffs failed to meet their obligations under that modified agreement. *Id.* Sometime in the spring of 2011, Plaintiffs vacated their residence. (Compl. ¶ 30.) On April 19, 2011, Defendant foreclosed on the residence and then purchased the home at a sheriff's sale. (*Id.*)

Plaintiffs filed this action in September 2011 challenging the validity of the foreclosure and asserting various other claims against Defendant. The Complaint contains the following nine counts:

Count 1: No Proof of Ownership of Loan/Authority to Foreclose

Count 2: Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act

Count 3: Declaratory Relief-Pooling and Servicing Agreement

Count 4: Trespass in Violation of Mich. Comp. Laws § 600.2919

Count 5: Common Law Trespass

Count 6: Mich. Comp. Laws § 600.2918—Interference with Possessory Interest

Count 7: Declaratory Relief—Foreclosure Barred by Unclean Hands

Count 8: Federal Fair Debt Collection Practices Act

Count 9: Michigan Fair Debt Collection Practices Act

(Comp. Dkt. #1).  Defendant removed the case to this court on October 18, 2011, and filed an amended answer on November 23, 2011.  (Def.'s Am. Ans. Dkt. # 5). Defendant subsequently filed the instant motion for judgment on the pleadings.

## II.  STANDARD

At the outset, Plaintiffs and Defendant disagree as to which Federal Rule of Civil Procedure should govern the court's consideration of the present motion.  Defendant filed the motion under Rule 12(c) as a motion for judgment on the pleadings, attaching several exhibits Plaintiffs did not include in their complaint.  Plaintiffs argue that Defendant's supplementation triggers Rule 12(d), forcing this court to treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Consequently, according to Plaintiffs, discovery would have to be completed before the court could consider summarily deciding the case.

The "assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort[ing] to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011).

> However, a court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment.

*Id.* (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (alteration in original).  These important inclusions prevent plaintiffs with legally insufficient claims from "surviv[ing] a motion to dismiss simply by failing to attach a dispositive document."  *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

Plaintiffs attached the mortgage and an incomplete copy of the sheriff's deed to the Complaint.  Defendant attached a complete copy of the sheriff's deed, the assignment of mortgage from MERS to Defendant, and numerous documents related to Plaintiffs' pending bankruptcy proceeding.  All of these documents are either publicly available or contain integral information that Plaintiffs referred to in the Complaint.  As such, these documents may be considered when deciding a motion under Rule 12.  The court sees no reason to convert the motion to one for summary judgment, and will proceed accordingly under Rule 12(c).

Motions under 12(c) are adjudicated under the same legal standard as those under Rule 12(b)(6).  *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).  Under Rule 12(b)(6), the court may dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) "'allow[s] a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything in the alleged complaint is true.'"  *Bagsby v. Gehres*, 225 F. App'x 337, 355 (6th Cir. 2007) (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993)).  Accordingly, the court must view the complaint in "the light most favorable to plaintiffs" by accepting all the allegations in it as true while drawing "all reasonable inferences . . . in favor of plaintiffs."  *Rondigo*, 641 F.3d at 680 (citing *Bassett*, 528 F.3d at 430).  "However, 'a legal conclusion couched as a factual allegation' need not be accepted as true."  *Id.* (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to "provide the grounds of [their] claimed entitlement to relief," Plaintiffs must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Rather, Plaintiffs' complaint needs to include "'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'"  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556, 570) (alteration in original). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief."  *Fabian*, 628 F.3d at 280 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration in original).  Pleading "facts that are 'merely consistent with' a defendant's liability" is not enough to cross the "'line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  A complaint can only survive a motion to dismiss if it has "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 570).  Ultimately, "determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

### III.  DISCUSSION

Defendant has moved for judgment on all nine of the Counts of the Complaint. Below, the court addresses the Counts in turn, and finds that judgment as a matter of law must be entered in favor of Defendants on each count.

### A.  Count I: No Proof of Ownership of Loan/Authority to Foreclose

In Count I, Plaintiffs allege that Defendant did not have the authority to initiate the foreclosure proceedings that resulted in the April 19, 2011 sheriff's sale of their property.  In support of this allegation, Plaintiffs contend (1) that MERS never assigned the mortgage to Defendant; (2) that even had MERS done so, MERS did not possess the requisite authority to foreclose and therefore could not assign that authority to Defendant; and (3) that the originating lender BNC's bankruptcy preceding the date of the assignment to Defendant somehow nullifies any assignment by MERS.

As a threshold matter, Defendant, citing *Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F. Supp. 2d 724 (E.D. Mich. 2010), argues that Plaintiffs lack standing to challenge the assignment by MERS to Defendant of MERS's interest in the loan.  Although Defendant is generally correct that "a litigant who is not a party to an assignment lacks standing to challenge that assignment," *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 101 (6th Cir. 2010), there are several exceptions to this general rule. Importantly for the instant case, "[a]n obligor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void."  *Id.* at 102 (citation and internal quotation marks omitted).  Here, Plaintiffs' allegations that MERS never assigned its interest to Defendant, or alternatively, that MERS did not have authority to assign its interest, if true, would void the assignment altogether.  Consequently, Plaintiffs have standing to bring Count I.  Nevertheless, Plaintiffs have failed to state a claim in Count I.

*1. MERS's assignment of its interest to Defendant*

Plaintiffs allege MERS never assigned Defendant any interest in the mortgage,

claiming that a record chain of title did not run from the mortgage to Defendant.  (Compl.

¶ 36.)  Under Michigan law, the party foreclosing a mortgage must be "the owner of the

indebtedness or of an interest in the indebtedness secured by the mortgage or the

servicing agent of the mortgage."  Mich. Comp. Laws § 600.3204(1)(d).  Additionally, "if

the party foreclosing a mortgage by advertisement is not the original mortgagee, a

record chain of title shall exist prior to the date of sale."  *Id.* § 600.3204(3).  Plaintiffs

allege that a record chain of title did not run from the mortgage to Defendant.  However,

Defendant has provided a copy of the assignment, proving that the mortgage was

assigned from MERS to Defendant over a year before the foreclosure sale.

(Assignment of Mortgage.)  As such, Plaintiffs' baldly stated claim that MERS did not

assign the mortgage to Defendant is unsustainable, and the foreclosure sale was in

compliance with § 600.3204(3).

*2. MERS's authority to foreclose and the assignment of that authority to Defendant*

Plaintiffs next contend that any assignment by MERS to Defendant could not

effectively confer on Defendant the authority to foreclose on their residence.  (Comp. ¶

38.)  This argument fails as a matter of law because MERS had the authority to

foreclose and that authority was properly assigned to Defendant.

Section 600.3204(1)(d) requires only that the party foreclosing on a mortgage be

"the owner of the indebtedness or of an interest in the indebtedness secured by the

mortgage or the servicing agent of the mortgage."  Mich. Comp. Laws § 600.3204(1)(d).

The Michigan Supreme Court recently held that "as record-holder of the mortgage,

MERS owned a security lien on the properties" which authorized them to "foreclose by advertisement under MCL 600.3204(1)(d)." *Residential Funding Co., L.L.C. v. Saurman*, 805 N.W.2d 183, 183 (Mich. 2011).  Moreover, the mortgage clearly states that MERS has "the right to foreclose and sell the Property . . . if necessary to comply with law or custom."  (Mortgage 3.)  Accordingly, Plaintiffs' contention that MERS lacked the authority to assign its interest in the mortgage fails as a matter of law.

Plaintiffs also suggest that even if MERS did in fact have the authority to foreclose, MERS was nevertheless unable to assign that authority to Defendant. (Compl. ¶ 38.)  This argument, however, has been squarely considered and rejected in numerous cases.  *See Hargow v. Wells Fargo Bank, N.A.*, No. 11-1806, 2012 WL 2552805, at *2 (6th 2011) ("If [the] interest was validly assigned to [Defendant], [Defendant] as the record-holder of the [m]ortgage would also have the right to foreclose by advertisement under § 600.3204(1)(d) and *Saurman*."); *Fortson v. Fed. Home Loan Mortg.*, No. 12-10043, 2012 WL 1183692, at *4 (E.D. Mich. Apr. 9, 2012) (finding an assignment by MERS prior to foreclosure sale provided assignee with authority to foreclose under Michigan law); *Agbay v. Wells Fargo Bank, N.A.*, No. 11-14060, 2012 WL 3029825, at *3 (E.D. Mich. July 25, 2012) (same).  In *Bakri v. Mortgage Electronic Registration System*, No. 297962, 2011 WL 3476818 (Mich. Ct. App. Aug. 9, 2011), the Michigan Court of Appeals explained that:

> [b]ecause plaintiff granted . . . MERS the power to assign the mortgage, the assignment of the mortgage to [the assignee] was valid.  Furthermore, because the mortgage specifically granted . . . MERS the power to foreclose on and sell the property as nominee for the lender, [the foreclosing bank], as assignee of the mortgage, also had the power to foreclose on and sell the property.

*Id.* at *4.  Here, Plaintiffs likewise granted MERS both the power to assign its interest in the mortgage and the power to foreclose on and sell the property.  (Mortgage 3.)  As a matter of law, Defendant, as assignee of MERS's interest in the mortgage, had the authority under Michigan law to foreclose by advertisement.

### 3.  BNC's bankruptcy and Defendant's ability to foreclose

Plaintiffs also argue that the assignment is invalid because the originating lender, BNC, ceased to exist prior to MERS's assignment to Defendant.  (Compl. ¶ 40.)  Plaintiffs' contention is unsupported by the language of the mortgage, and, if accepted, would produce a windfall for Plantiffs because it would mean their mortgage is unforecloseable.  The plain language of the mortgage provides that MERS is the nominee not just for BNC, but also for its "successors and assigns." (Mortgage 3.)  MERS, therefore, had the authority to foreclose by advertisement before assigning its interest in the mortgage regardless of the status of BNC's interest in the mortgage.  Thus, the assignment of the mortgage from MERS to Defendant was not affected by BNC's bankruptcy, and the bankruptcy does not negate Defendant's authority to foreclose on the property.

### B.  Count II: Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act

Plaintiffs claim several aspects of the foreclosure proceedings constituted violations of the Michigan Mortgage Brokers, Lenders, and Servicer Licensing Act ("MBLSLA").  Specifically, these alleged violations stem from threats of eviction from the sheriff, the foreclosure itself, and Defendant's alleged failure to modify Plaintiffs' loan under the Home Affordable Modification Program ("HAMP").  Defendant argues, *inter*

*alia*, that Plaintiffs' MBLSLA claims fail because the MBLSLA is not applicable to nationally-chartered banks such as Defendant.  The court agrees.

The MBLSLA expressly excludes from its coverage any "depository financial institution."  Mich. Comp. Laws § 445.1675(a).  A depository financial institution is defined to include "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system.  *Id.* § 445.1651a(f).  Here, Defendant's status as a nationally-chartered bank, alone, is sufficient to warrant dismissal of Plaintiffs' MBLSLA claims.[1]

### C.  Count III: Declaratory Relief—Pooling and Servicing Agreement

Plaintiffs allege that Defendant violated the terms of a "Pooling and Servicing Agreement" between the original mortgagee and subsequent assignees concerning the transferring of the mortgage loan and the documents regarding that loan.  The claim fails because Plaintiffs lack standing to make this claim and have failed to sufficiently provide a factual basis in support of the claim.

Plaintiffs are neither parties to nor intended third-party beneficiaries of the Pooling and Servicing Agreement.  Thus, they lack standing to challenge Defendant's

---

[1]Defendant's status as a national bank is publically available information of which the court may take judicial notice.  *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *abrogated on other grounds by Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784 (2010) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *see also Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003) (taking judicial notice of a lender's status as a regulated entity in the context of a motion to dismiss for failure to state a claim)*.*

compliance with that agreement.  *See Livonia Prop. Holdings, L.L.C.*, 717 F. Supp. 2d at 748 (considering challenges to compliance under a pooling and servicing agreement, noting that the borrower lacked standing because it was not a party to or a third-party beneficiary of that agreement and further observing that any breach in an underlying pooling and servicing agreement "would not render the assignments themselves (which are separate contracts) void.").  Even if Plaintiffs had standing, their complaint nevertheless fails to identify the terms of the agreement or how that agreement was allegedly breached.  Plaintiffs provide no factual averments whatsoever supporting their claim, and thus fall short of the level of plausibility required to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

### D.  Count IV: Trespass in Violation of Mich. Comp. Laws § 600.2919

Plaintiffs claim that Defendant violated Mich. Comp. Laws § 600.2919 by trespassing on their residence on an unnamed date and "cutting [the] lawn and/or pulling weeds, trees and/or shrubs."  (Comp. ¶ 54.)  In addition, Plaintiffs allege that Defendant violated § 600.2919 by "kicking Plaintiffs out of their own home, and changing the locks on them, by threat of having the sheriff physically remove them if they did not move out immediately."  (*Id.*)  Plaintiffs purport to have suffered damages as a result of these alleged acts.  Plaintiffs' claim fails because it does not plead facts sufficient to establish this cause of action or to establish any damages they suffered.  Additionally, Plaintiffs consented to the alleged entries by way of the mortgage agreement.

Section 600.2919, which concerns waste on real property, prohibits the unauthorized removal of wood, crops, and stones from real property.  Mich. Comp.

Laws § 600.2919(1).  In order to recover under the statute, a party must establish

"actual damages."  *See id.* § 600.2919(1)(c).  Plaintiffs fail to identify what waste

actually occurred on their property, or how exactly the alleged "cutting [the] lawn and/or

pulling weeds, trees and/or shrubs" caused any damage to them whatsoever.  With

these deficiencies, the claims are simply "unadorned, the-defendant-unlawfully-harmed-

me accusations."  *Iqbal*, 556 U.S. at 678.  Without a sufficient factual basis supporting

the claim or the alleged damages resulting from the claim, the court is unable "to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

(citing *Twombly*, 550 U.S. at 570).

Furthermore, the language of the mortgage clearly authorized Defendant to

secure the property in the event the "[b]orrower fail[ed] to perform the covenants and

agreements" contained in the mortgage or the "[b]orrower . . . abandoned the Property."

(Mortgage 8.)  "Securing the Property includes, but is not limited to, entering the

Property to make repairs, change locks, . . . [and] eliminate building or other code

violations."  (*Id.*)  In the Complaint, Plaintiffs concede that they moved out in the spring

of 2010.  As such, Defendant had the right to secure the Property after that time.

### E.  Count V: Common Law Trespass

Plaintiffs claim Defendant committed common law trespass by "physically

invad[ing] the land . . . [and] kicking Plaintiffs out of their home, and changing the locks

on them, by threat of having the sheriff physically remove them if they did not move out

immediately."  (Comp'. ¶ 58.)  "A trespass is an unauthorized invasion upon the private

property of another.  Thus, consent is an affirmative defense to a claim of trespass."

*Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 609 N.W.2d 607, 613 (Mich. Ct.

App. 2000) (citations omitted).  As mentioned in the preceding subsection, Plaintiffs

authorized Defendant's entry onto their property for the purposes of securing it in the

event Plaintiffs vacated the property or failed to fulfill their obligations under the

mortgage.  Count VI fails to state a claim because the plain language of the mortgage

evinces Plaintiffs' consent to permit Defendant's entry onto the property.  Thus, the

claim cannot survive Defendant's motion for judgment.

### F.  Count VI: Mich. Comp. Laws § 600.2918—Interference with Possessory Interest

Plaintiffs claim that Defendant's ejection of Plaintiffs from their residence violated

Mich. Comp. Laws § 600.2918(1), which provides, in pertinent part, that "any person

who is ejected or put out of any lands or tenements in a forcible and unlawful manner,

or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover

. . . his actual damages . . . in addition to recovering possession."  The statute is only

intended to apply "to the use or threat of personal violence or force."  *United Coin Meter*

*Co. v. Lasala*, 296 N.W.2d 221, 223 (Mich. Ct. App. 1980); *see also Patterson v.*

*Dombrowski*, 60 N.W.2d 456, 458-59 (Mich. 1953), ("'The entry or the detainer must be

riotous, or personal violence must be used or in some way threatened, or the conduct of

the parties guilty of the entry or detainer must be such as in some way to inspire terror

or alarm in the persons evicted or kept out—in other words, the force contemplated by

the statute is not merely the force used against, or upon, the property, but force used or

threatened against persons, as a means, or for the purpose, of expelling or keeping out

the prior possessor.'" (quoting *Shaw v. Hoffman*, 25 Mich. 162, 168-69 (Mich. 1872))).

14

Plaintiffs have not pled facts that, when accepted as true, would establish a right to relief under § 600.2918.  The substance of Plaintiffs' claim, as currently pled, amounts to nothing more than the following statement: "Defendant has violated the above-referenced statute, by among other things, ejecting Plaintiffs from their home with threats that if they did not leave voluntarily, prior to even the mere commencement of foreclosure proceedings, they would be forcibly removed by the sheriff."  (Compl. ¶ 65.)  The Complaint fails to include any allegations related to the specifics of any threats, the dates the threats were made, and who actually made the threats.

Furthermore, Plaintiffs have failed to show how § 600.2918 even applies to this case.  Plaintiffs claim § 600.2918 was violated because they were threatened "that if they did not leave voluntarily . . . they would be forcibly removed by the sheriff."  (*Id.*)  But a legal eviction by the sheriff cannot be held to inspire the kind of terror or alarm § 600.2918 is meant to prohibit.  Enacted to prevent contentious and potentially dangerous self-help evictions, the provision directs parties toward judicial proceedings which often involve the sheriff in the event an individual fails to vacate.

### G.  Count VII: Declaratory Relief—Foreclosure Barred by Unclean Hands

In Count VII, Plaintiffs allege that Defendant's "bad faith negotiations with Plaintiffs, as well as bad faith processing of their mortgage loan and/or request for modification [and] bad faith claims of eviction by the sheriff . . ." have made Defendant's hands unclean, thereby precluding Defendant from exercising the equitable relief of foreclosure.  (Comp. ¶ 69.)  The equitable doctrine of unclean hands is not a cause of action.  *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 911 (E.D. Mich. 2012) (citing *Hertiage Broad Co. v. Willson* Commc'ns, Inc., 428 N.W.2d 784, 787

(Mich. 1988)).  Instead, "[t]he clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  *McFerren v. B&B Inv. Grp.*, 655 N.W.2d 779, 783 (Mich. Ct. App. 2002) (internal quotations and citations omitted).  In other words, unclean hands is an equitable defense.  Plaintiffs have therefore failed to state a claim in Count VII.

### H.  Count VIII: Federal Fair Debt Collection Practices Act

Count VIII alleges Defendant violated the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  However, the entirety of the Count is a list of the subsections that Plaintiffs claim were violated.  Plaintiffs include no factual allegations to support their FDCPA claim.  Having provided nothing more than recitations of statutory provisions and bare legal conclusions, the claim must be dismissed.

Furthermore, Plaintiffs fail to meet their burden of establishing that Defendant is a "debt collector" and therefore within the scope of the FDCPA.  The FDCPA "does not apply to creditors who attempt to collect their own debts in their own name."  *Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1041 (S.D. Ohio 1997).  As Defendant was collecting a debt in its own name, the FDCPA is not applicable to the facts presented here.  *See Montgomery v. Huntington Bank*, 346 F.3d 693, 700 (6th Cir. 2003) ("Congress drew a distinction between a debt collector and an enforcer of a security interest."); *c.f., Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) ("[F]oreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCP.").

## I.  Count IX: Michigan Fair Debt Collection Practices Act

Despite captioning Count IX as a Michigan Fair Debt Collection Practices Act claim, Plaintiffs' final claim actually alleges that Defendant violated the Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.901 *et seq.* by (1) failing to give Plaintiffs validation notice; (2) threatening to initiate legal action; and (3) communicating with Plaintiffs after being notified that they were represented by an attorney.  (Comp. ¶ 77.)  Count IX closely resembles Plaintiffs' FDCPA claim, and fails for the same reasons.  At the outset, the claim includes no factual allegations to plausibly establish a violation of the MOC, and contains only "bare assertions of legal conclusions."  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).  This type of pleading cannot survive a motion for judgment on the pleadings.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

Additionally, Plaintiffs fail to demonstrate that the MOC applies to Defendant. "[C]ourts have held that the MOC does not apply to mortgage foreclosures."  *Agbay*, 2012 WL 3029825, at *7 (citing *Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 2012 WL 113534 (E.D. Mich. Jan. 13, 2012)).  Specifically, the MOC does not apply to those entities "whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency . . . ."  Mich. Comp. Laws § 339.901(b).  Accordingly, any actions by Defendant to foreclose on Plaintiffs' residence or to collect outstanding loan payments do not constitute debt collection under the MOC.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's motion to dismiss [Dkt. # 8] is GRANTED.  The Complaint is DISMISSED WITH PREJUDICE.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 30, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 30, 2012, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522